FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 07, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TONYA RENE KILLION,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:17-CV-03123-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12, 16. Ms. Killion brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her applications for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

**GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Killion's Motion for Summary Judgment.

## I.    Jurisdiction

Ms. Killion filed a Title II application on August 16, 2013, with an alleged onset date of January 1, 2012. AR 192-95. Her application was initially denied on October 25, 2013, AR 78-90, and on reconsideration on January 22, 2014, AR 91-103. Ms. Killion also filed a Title XVI application on July 16, 2015, with an alleged onset date of August 1, 2012. AR 296-97. This claim was escalated to a hearing and considered as part of the ALJ's decision. AR 20.

A hearing with Administrative Law Judge ("ALJ") Stephanie Martz occurred on July 24, 2015. AR 44-77. On March 30, 2016, the ALJ issued a decision finding Ms. Killion ineligible for disability benefits. AR 20-33. The Appeals Council denied Ms. Killion's request for review on May 15, 2017, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Killion timely filed the present action challenging the denial of benefits, on July 11, 2017. ECF No. 3. Accordingly, Ms. Killion's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Ms. Killion was 48 years old on the date of her hearing. AR 192. She has at least a high school education and some college. AR 242. She has previous work experience as a fast food manager, bartender, nurse aide, cook, food service manager, fast food worker, bar manager, retail manager, and human resources clerk. AR 31.

## V.    The ALJ's Findings

The ALJ determined that Ms. Killion was not under a disability within the meaning of the Act from January 1, 2012, through the date of the ALJ's decision. AR 20-33.

**At step one**, the ALJ found that Ms. Killion had not engaged in substantial gainful activity since January 1, 2012 (citing 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). AR 23.

**At step two**, the ALJ found Ms. Killion had the following severe impairments: lumbar degenerative disc disease with mild canal narrowing, cervical degenerative disc disease, hip bursitis, major depressive disorder, anxiety disorder, and obsessive compulsive disorder (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 23.

At **step three**, the ALJ found that Ms. Killion did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 24-26.

**At step four**, the ALJ found Ms. Killion had the residual functional capacity to perform a full range of light work, except: she can sit 6 to 8 hours and stand and/or walk 4 hours in an 8-hour day with regular breaks; she needs to be able to stand for 5 to 10 minutes after sitting for 30 minutes; she has unlimited ability to push/pull within these exertional limitations; she can frequently climb ramps and

stairs but never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to vibration and hazards; she can understand, remember, and carry out simple as well as routine and repetitive tasks and some detailed tasks consistent with both simple and semi-skilled work; she can maintain concentration, persistence, and pace over an 8-hour day on such tasks with regular breaks. AR 26.

The ALJ determined that Ms. Killion is not capable of performing past relevant work, including fast food manager, bartender, nurse aide, cook, food service manager, fast food worker, bar manager, retail manager, and human resources clerk. AR 31.

**At step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. AR 31-32. These include cashier II, telemarketer, and assembler. AR 32.

## VI.    Issues for Review

Ms. Killion argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues that the ALJ erred by: (1) failing to properly evaluate the medical opinion evidence, specifically by erroneously rejecting the treating medical opinion of PA-C Richmond and the examining opinion of Dr. Pellicer and failing to evaluate the examining opinion of

Dr. Billings; (2) failing to account for Ms. Killion's manipulative limitations, erroneously attributing those limitations solely to her wrist injury, while disregarding the symptoms of her cervical degenerative disc disease; and (3) discrediting Ms. Killion's symptom testimony without providing specific, clear, and convincing reasons for doing so. ECF No. 12 at 1.

## VII.   Discussion

### A. The ALJ properly evaluated the medical opinion evidence.

#### a.  Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted

for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Daniel Richmond, PA-C

The ALJ gave little weight to the January 2015 opinion from Mr. Richmond that Ms. Killion was severely limited. AR 30, 456-458. The ALJ reasoned that the opinion was inconsistent with the treatment record, Mr. Richmond provided no explanation for his opinion, and providers at a neurology consultation one month later found Ms. Killion's imaging to be unremarkable and unable to explain her complaints. AR 30.

Mr. Richmond is considered an "other source" for his opinion. "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-

medical sources as to how an impairment affects a claimant's ability to work."
*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony
can never establish a diagnosis or disability absent corroborating competent
medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ
is obligated to give reasons germane to "other source" testimony before
discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Inconsistency with evidence in the medical record is a germane reason to
reject other source testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.
2005). As the ALJ noted, Mr. Richmond's opinion is inconsistent with a neurology
evaluation on February 20, 2015, approximately one month after Mr. Richmond
provided his opinion. AR 582-85. Ms. Killion's lumbar MRI was described as
"generally unremarkable" and there was no pathology in the lumbar MRI to
account for Ms. Killion's hip and thigh pain.[1] AR 584. These findings are
supported by the notes regarding Ms. Killion's MRI on January 20, 2015. AR 466.
Despite these findings in the same time period, Mr. Richmond opined that Ms.
Killion's lumbar impairments rated 4-5 in severity, meaning marked to severe, and
resulted in an inability to meet even the demands of sedentary work. AR 457-58.

---

[1] Ms. Killion notes in her briefing that the evaluation was performed by a
registered nurse practitioner, ECF No. 12 at 11, presumably rendering the
findings less reliable, but the record demonstrates that Ms. Killion's lumbar
MRI was reviewed by Dr. Chang. AR 584.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11**

These significant, contemporaneous inconsistencies are germane reasons for the ALJ to reject this opinion.

### c. Dr. Mary Pellicer, M.D.

Dr. Pellicer performed a consultative examination on Ms. Killion on December 9, 2015. AR 592-606. The ALJ gave little weight to Dr. Pellicer's opinion that Ms. Killion could only stand and/or walk for two hours, sit for six hours, lift up to ten pounds, and that she could not bend, squat, crawl, kneel, or climb, and she could only occasionally manipulate objects. AR 30, 598. The ALJ based this finding on the inconsistency with Ms. Killion's longitudinal treatment history, her performance on physical and mental examinations, her documented daily activities, and Dr. Pellicer's own examination findings. AR 30.

The ALJ first found Dr. Pellicer's opinion inconsistent with Ms. Killion's longitudinal treatment record. AR 30. Ms. Killion reported to Dr. Pellicer with significant difficulty moving and an uncomfortable appearance, including a limping gait. AR 29, 596-97. She was tender in her right shoulder, hips, and spine, and had a decreased range of motion. *Id.* These findings, the ALJ observed, are "markedly inconsistent with her treatment notes," citing to only tenderness to palpitation with no other abnormalities in July 2015. AR 541-42. The ALJ also noted that when Ms. Killion reported multiple times to medical care providers for bladder issues in 2015, she did not report back, neck, or hip pain. AR 544-49, 553-

55. The ALJ opined that these inconsistencies combined with Ms. Killion's mild imaging findings "render[ed] this one-time evaluation less persuasive." AR 29. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999).

In addition, discrepancies between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ noted that despite providing manipulative limitations, Dr. Pellicer found Ms. Killion to have normal wrist range of motion, normal grip strength, and Ms. Killion was able to open a jar. AR 596-98.

Finally, the ALJ also pointed to the inconsistency between Dr. Pellicer's opinion and Ms. Killion's activities of daily living. AR 30. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Ms. Killion is able to do a variety of household chores and perform self-care activities. AR 594. In particular, her hobbies of woodworking, ceramic making, and beading strongly contradict the manipulative limitations opined by Dr. Pellicer. AR 594, 598.

//

//

### d. Dr. Emma Joan Billings, PhD

Dr. Billings conducted a consultative examination with Ms. Killion on October 21, 2013. AR 430-37. Dr. Billings found Ms. Killion to have low average to average intellectual functioning, but she did not provide any functional limitations or a proposed residual functional capacity. AR 436-37. Ms. Killion asserts the ALJ erred by failing to consider Dr. Billing's opinion. ECF No. 12 at 12.

While the ALJ did not specify a weight given to Dr. Billings' opinion, the ALJ did evaluate Dr. Billings' report as part of the overall record. AR 29. The ALJ noted numerous findings by Dr. Billings, including Ms. Killion's normal speech, broad affect, and recall abilities. *Id.*

Ms. Killion has the burden of showing prejudicial error. *See Molina*, 674 F.3d at 1110-11. The ALJ's decision demonstrates that Dr. Billings' report was considered in the ALJ's evaluation of the record overall, and Dr. Billings did not opine any specific functional limitations that the ALJ rejected to warrant reversible error.

### B. The ALJ did not err with regard to manipulative limitations.

The ALJ did not find a medically determinable impairment related to Ms. Killion's wrist pain. AR 23-24. The ALJ noted pain is a symptom, not a medically determinable impairment, and there are no objective findings, other than injuries in

2010 and 2012, to identify a medically determinable impairment related to Ms. Killion's wrist pain. *Id.*

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Examination of her wrist in June 2011 by Dr. John Coker, M.D., showed normal findings. AR 321. Following a second wrist injury in January 2012, x-rays were normal, AR 371, and Ms. Killion did not seek any further treatment regarding her wrists until 2015, AR 24. In February 2015, she reported shooting pain and numbness, AR 584, but the record does not contain any objective findings affecting her nerves. For example, an MRI of her cervical spine did not indicate

nerve impingement. AR 524. Additionally, Ms. Killion was advised to have a nerve conduction study, which she did not complete. AR 541.

The record also demonstrates mild findings that do not support a medically determinable impairment in Ms. Killion's wrists. These include full strength in her upper extremities, intact sensation, normal reflexes, and intact range of motion. AR 505, 584. During her consultative examination, Dr. Pellicer found Ms. Killion able to open a jar and pick coins off a flat surface. AR 597. Additionally, Dr. Pellicer listed Ms. Killion's self-reported hobbies as woodworking, ceramic making, and beading, inconsistent with manipulative limitations. AR 594.

Because Ms. Killion was found to have at least one severe impairment, this case was not resolved at step two. Thus, any error in the ALJ's finding at step two is harmless, if all impairments, severe and non-severe, were considered in the determination Ms. Killion's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity).

Ms. Killion disagrees with the ALJ's interpretation of these records, specifically in relation to her cervical degenerative disc disease, and she asserts that manipulative limitations should have been included in her residual functional capacity. When an ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The ALJ provided multiple, legally sufficient reasons for rejecting the manipulative limitations opined by Dr. Pellicer, and the Court find no error in the failure to include manipulative limitations in the residual functional capacity for the reasons provided previously. *See supra* at pp. 12-13.

**C. The ALJ did not err in evaluating Ms. Killion's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ determined that the medical evidence is inconsistent with Ms. Killion's allegations of disabling limitations, and her testimony is out of proportion to the record. AR 27.

Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ points to generally minimal treatment and mild findings until 2015. AR 27-28. The record supports this with mild objective physical examination findings other than some issues following a wrist injury and a car accident in 2012. AR 341, 347, 350, 368.

While Ms. Killion's treatment visits increased in frequency in 2015, objective findings, such as imaging, continued to fail to support the level of impairment she alleged. AR 466, 524. Dr. Chang with the University of Washington's Neurosurgery Department was unable to find pathology to explain

Ms. Killion's complaints based on her lumbar MRI. AR 584. Mild examination findings supported this. AR 582-84.

Ms. Killion's allegations of disabling mental limitations are also unsupported by the record. The ALJ pointed to a history of relatively mild mental status examinations. AR 29, 435-36, 595. More abnormal findings were connected to periods of situational trauma, such as divorce and homelessness. AR 468, 470, 473.

The ALJ also noted inconsistent treatment. In particular, the ALJ noted that Ms. Killion did not seek mental health treatment until 2015, AR 29, and she was discharged from treatment in July 2015 after missing two consecutive appointments, AR 533-34. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Additionally, if an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Brown v. Barnhart*, 390 F.3d 535, 540 (9th Cir. 2004). Ms. Killion reported to her provider on October 2014 that she copes "pretty well" with her anxiety and depression, and she can manage her anxiety with clonazepam, which she uses two to four times per year. AR 463.

Finally, the ALJ noted that Ms. Killion's activities of daily living were inconsistent with her allegations of disabling mental limitations. AR 29-30.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**

Despite allegations of problems with others, Ms. Killion spends a great deal of time with her daughters, sees her friends regularly, and visits the Eagle Lodge. AR 271.

In sum, the Court does not find the ALJ erred when assessing Ms. Killion's credibility because her allegations of complete disability are inconsistent with the record and medical evidence, and her activities reflect a level of functioning that is inconsistent with claims of total disability.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 16,** is **GRANTED.**

///

///

///

///

///

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 20

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order,

forward copies to counsel and **close the file**.

**DATED** this 7th day of June, 2018.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge